TOWNSHIP OF WEST BLOOMFIELD v. CHAPMAN.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—REASONABLENESS.
   A municipal zoning ordinance must be reasonable and its reasonableness becomes the test of its legality.

2. TOWNSHIPS—ZONING ORDINANCE—RESIDENCES—FARMS.
   Township zoning ordinance restricting use of defendant's land to residence and farming purposes *held*, to encourage the best uses of the land and presently to promote the legitimate use and enjoyment of the properties, thus promoting the general welfare (West Bloomfield Township Zoning Ordinance).

3. MUNICIPAL CORPORATIONS—SPOT ZONING.
   Spot zoning defeats the basic purpose of zoning.

4. TOWNSHIPS—ZONING—RESIDENCES—FARMS.
   Residents of a township that is zoned for residence and farm uses are entitled to reasonable protection from noise, smoke, business, machines, and industrial atmosphere.

5. INJUNCTION—MACHINE SHOP—FRAUD—BUILDING PERMIT—TOWNSHIP ZONING ORDINANCE.
   Defendant property owner who received his permit to erect a tool shed on the fraudulent representation that it was to be used for agricultural purposes is without standing in equity suit to enjoin his continuance of use as a machine shop, where valid

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 21.
[3] 58 Am Jur, Zoning § 39.
[4] 58 Am Jur, Zoning § 25 *et seq.*
[5, 7] 58 Am Jur, Zoning § 188.

township ordinance had zoned the property for residence or farm purposes some 9 years before he purchased the property (West Bloomfield Township Zoning Ordinance).

6. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—TEST OF VALIDITY.

The test of validity of a zoning ordinance is not whether the prohibition contained therein may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, but whether it does so at the time the determination as to its validity is made.

7. TOWNSHIPS—ZONING ORDINANCE—INJUNCTION—MANUFACTURING.

Plaintiff township *held,* entitled to injunction prohibiting defendant from carrying on a manufacturing business on premises zoned to residence and farming uses, where he had fraudulently procured building permit, notwithstanding the ordinance presently prohibited industry throughout the township and zoning ordinance is found reasonable because of the location and character of the surrounding property (West Bloomfield Township Zoning Ordinance).

Appeal from Oakland; Holland (H. Russel), J. Submitted October 18, 1957. (Docket No. 79, Calendar No. 47,084.) Decided March 6, 1958.

Bill by Township of West Bloomfield, a municipal corporation, against William C. Chapman to enjoin violation of zoning ordinance. Decree for plaintiff. Defendant appeals. Affirmed.

*A. Floyd Blakeslee,* for plaintiff.

*Edward N. Barnard* and *Crossley, Bailey & Robbins,* for defendant.

VOELKER, J. The opinion of the chancellor below follows:

\* \* \*

This is an action brought by the township of West Bloomfield, to restrain the defendant, William C. Chapman, from operating a manufacturing business (machine shop) in a residential zone in violation of a township zoning ordinance.

The defendant herein, William Chapman, is the owner of a 13-acre parcel of land, with a dwelling and buildings thereon, in section 19 of West Bloomfield township. Exhibit 5 is a zoning map and the zoning ordinance here involved. Defendant's property has a frontage of some 300 feet on the Pontiac Trail and extends back slightly past the railroad. Defendant *purchased* said property the latter part of 1951 for the purpose of using the same for *manufacturing purposes*.

The zoning ordinance involved was passed by the plaintiff township May 12, 1942 (effective date, June 9, 1942), pursuant to township authority granted by PA 1937, No 302,* and without the sanction of any county authorities. Defendant's property is zoned as Residence Zone 2. The lands in said zone shall be used for dwelling and farming purposes only. Some of the acreage has been used for agricultural purposes and some has been used as a gravel pit and/or peat beds.

On or about September 11, 1952, the defendant submitted to the township authorities plans for the erection of a "tool shed." The application for building permit which accompanied the plans contained the following language in the handwriting of the defendant applicant and over his signature.

*"This building to be used for agricultural purposes only."*

The building inspector Underhill told defendant Chapman that in filing his application for building permit (exhibit 2) the *purpose* of the structure must be inserted and declared under paragraph 16 of exhibit 2. It was discovered after the initial permit was issued on September 13, 1952, that the footings were larger than 40 x 60 x 16 feet whereupon a

---

* This act was repealed by PA 1943, No 184, the present township zoning act.—REPORTER.

second permit was applied for and issued which permitted the building of a cement block building 42 x 75 x 16 feet. Said applications are signed by defendant Chapman.

Said building, "to be used for agricultural purposes only," is now being used as a power-operated machine shop where the stamping of automotive parts is carried on. Among other things, some 7 or 8 punch presses and some drill presses are employed. Said stamping shop is within 175 feet of the home of one Don A. Smith and within 100 feet of the dwelling of the defendant herein. The building was never used for its declared purpose.

The parties contend as follows:

1. The plaintiff asserts that the normal and natural use to which this 13-acre plot could and should be put is residential and that the limitations of use imposed by the zoning ordinance of the township are reasonable.

2. (a) The defendant counters by asserting that said parcel is entirely unfit for residential purposes and that its best use is for manufacturing. (b) Defendant asserts that to compel him to use said property for residential purposes would be unreasonable and confiscatory.

Don A. Smith who lives 175 feet from the shop, and others, testifying for the plaintiff, assert that said shop creates a disturbing noise, that the same is readily heard and is objectionable and that the same will depreciate the value of their property. Witness Smith asserted at one point that "there is noise, I can hear it in my house and can hear it as soon as I get out of my car." The witnesses for the plaintiff generally assert that they moved out into the country from their city homes to get away from city noises and to enjoy the peace and quietude of their country acres and that this *deliberate* intrusion on the part of the defendant has not only made their

property less enjoyable from an aesthetic standpoint, but has greatly depreciated the value thereof.

One witness asserted that the noise from the defendant's machine shop disturbed his "peace of mind," another that "ordinary radios will not work." All of plaintiff's witnesses who lived nearby stated that they could hear the "noise;" that they purchased their property believing it would remain residential or rural in character; that they were trying to get away from machines, seeking "a quiet place" in which to live and that said machine shop not only depreciates the value of their property but *renders it uncomfortable* and not enjoyable to live on. The defendant, who lives about 100 feet from the shop, says that the noise does not "bother" him at all and cannot be heard except if one is virtually under the window of the shop.

Plaintiff's witnesses who assert that the property is adaptable to residential purposes or could be adapted to residential purposes, say that the value of the land for such purposes would be from $600 to $700 per acre.

Defendant's 13 acres has a farm home thereon as aforesaid, together with the said cinder-block machine shop. Said buildings are located on the front of the property near the Pontiac Trail. Behind the buildings is a swamp or pond filled with water which, according to one witness, has some catfish in it. Behind the swamp is a high spot or what was once a "hogback." To the rear of this high ground which has been reduced in height is more swamp and then another high spot. Of the total 13 acres approximately 5 or 6 are low and/or swampy.

Defendant's witnesses assert that the best use for the property is industry. The value for industrial purposes would be $500 to $600 per acre. They assert that if the property is to be used for single-family residences as per the requirements of the

zoning ordinance that said property would accommodate only 3 single residences which would border upon the road or Pontiac Trail.

The area generally can only be described as rural. The homes in the area for the most part are small, located upon acreage that might be referred to as small farms. A branch of the Grand Trunk Railroad traverses the area and cuts across the back end of the defendant's property. Industrial properties are to be found 1/2 mile away in an adjacent township. There is a gasoline station 1/4 mile west of the defendant's property.

The prior use of the defendant's property has been at various times farming, the removal of gravel and peat, and general nursery uses. Considerable peat has been removed from the property, the same being found in spots to a depth of 40 feet. The defendant has equipment, for the removal of peat, of the value of $6,000. Defendant owner asserts that the property, except for 3 locations on the road or the front, is unfit for residential use.

As aforesaid, the defendant purchased the property for the contended purpose of locating thereon a machine shop. He does not claim to have been misled as to the limitations placed on the property by the zoning ordinance. The value of the machinery in said shop amounts to some $25,000.

Mr. Partridge, a well-recognized realtor, stated that he believed the best use for the 13 acres would be for industrial purposes. For such purpose he places a value on the premises of $500 to $600 per acre. He asserts that for single residences it would be worthless except for 3 home sites on the road or along the 300-foot frontage. On cross-examination, he admitted that "some houses" could be built on the high spots. Although Mr. Partridge is a capable and respected realtor, the court is unable to agree with his over-all conclusion that "anyone who tried

to subdivide the 13-acre parcel for residential uses would be out of his head."

In view of the testimony submitted, the court must draw the following factual conclusions:

1. That the machine shop is located in what can only be described as a rural residential area.

2. That the said 5 or 6 acres of land that is swampy and/or low is no more adaptable to (nor valuable for) manufacturing purposes than it is to residential purposes. In this connection, it is the opinion of the court that with some dragging out and dredging, plus the application of some everyday ingenuity in laying out the building sites, that the property, despite its present swampy and low spots, could be made both attractive and desirable for residential purposes.

3. That the property here is located in a rural residential area of good character and is "readily and reasonably adaptable to residential uses."

4. That the obvious effect of defendant's continued use of his "tool shed" for machine shop will be to depreciate the value of the adjacent property.

5. That the presence of the defendant's machine shop not only detracts from the value of the surrounding property but detracts from the aesthetic value of the adjacent premises.

6. That in addition to the effects mentioned in paragraph 5, the presence of the machine shop, in a real and substantial way, renders the adjacent properties far less enjoyable and robs the occupants of the peace and quietude which they sought and which they, within reason, have a right to.

7. That the building of the "tool shed" for an intended machine shop was a fraudulent approach on the defendant's part to breach or circumvent the ordinance.

In view of the testimony and the factual conclusions and findings made therefrom, the court is of

the opinion that plaintiff is entitled to the relief sought because:

1. The zoning ordinance here is reasonable. It is a basic rule that scarcely requires citations in support thereof, that "A zoning ordinance must be reasonable and its reasonableness becomes the test of its legality." *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich 31, 36.

2. The ordinance here involved encourages the best uses of the lands involved. (Defendant's property and surrounding area.)

3. The zoning ordinance here does, in a real and present manner, promote the legitimate use and enjoyment of properties and thus promotes the general welfare.

4. To rule that the ordinance in this case is unenforceable as to the defendant's property, because it is irregular or swampy or low in spots, would result in spot zoning and thus defeat the basic purpose of zoning. In other words, if each individual owner in an area is permitted to use his parcel for its best individual use, then there could be no effective zoning.

5. Those who move into rural areas for the purpose of getting away from noise, smoke, business, machines and industrial atmosphere, have a right to be protected against such things if they purchase their properties with reasonable precautions and under reasonable circumstances.

6. There is no equity in the defendant's position.

Under the ruling in *Fass* v. *City of Highland Park,* 326 Mich 19, the defendant can claim no rights by reason of the building permit issued to him, he having received said permit through the fraudulent representation that he was constructing a "tool shed" on his property. The facts in the case at bar are much stronger than in the case of *Fass* v. *Highland Park.* In that case the owner had [was?] given

to understand from the city engineer that he could use the property for his intended purposes. In the case at bar the defendant owner was told that the proposed building could be constructed for agricultural purposes only, as written into the application for a building permit.

The basic question which arises in this case is whether the township zoning ordinance prohibiting industry in this district is reasonable and bears any relationship to public health, safety or general welfare.

It is this court's opinion, in view of the testimony relative to the character of the premises, the area, and the character of the properties surrounding it, that the township zoning ordinance is reasonable and that it bears a tangible and real relationship to public health, safety, morals and general welfare.

As heretofore recited, some of the witnesses bought property in the district involved in order to get away from noise, dirt, smoke, machinery, and the annoyances of city life. It was proven that the presence of this machine shop destroyed the peace and quietude and the "peace of mind" of some of the surrounding property owners.

The court believes the witness who stated that "there is noise * * * I can hear it in the house and as soon as I get out of my car" and that the same "detracts from my peace of mind and the value of my 30 acres." The foregoing, without giving undue consideration to the matter of values or things aesthetic, warrants the finding that the zoning of defendant's property for residential and agricultural has a real relation to public health, safety, morals, and general welfare. It would appear that no proof or unusual logic is needed to know that if people are, within reason, rendered unhappy or physically uncomfortable by a situation which they did not invite and which they tried to guard against,

that the same would affect public health, general well-being and/or the public welfare. If this be flimsy reasoning or misinterpretation of terms used in the voluminous case law, then the court has fallen into grievous error.

The reasoning found in the case of *Cady* v. *City of Detroit,* 289 Mich 499, 512, and the following specific language is here appropriate.

"It cannot be denied that a city systematically developed offers greater attractiveness to the home seeker than a city that is developed in a haphazard way. The one compares to the other about as a well-ordered department store compares to a junk shop. If such regulations stabilize the value of property, promote the permanency of desirable home surroundings, and if they add to the happiness and comfort of the citizens, they thereby promote the general welfare.  *  *  *

"The benefits to be derived by cities adopting such regulations may be summarized as follows: They attract a desirable and assure a permanent citizenship; they foster pride in and attachment to the city; they promote happiness and contentment; they stabilize the use and value of property and promote the peace, tranquillity, and good order of the city. We do not hesitate to say that the attainment of these objects affords a legitimate field for the exercise of police power. He who owns property in such a district is not deprived of its use by such regulation. He may use it for the purposes to which the section in which it is located is dedicated. That he shall not be permitted to use it to the desecration of the community constitutes no unreasonable or permanent hardship and results in no unjust burden."

The defendant in this case predicates his position upon the claimed fact that the property here involved is "adaptable for industrial purposes" and has a special value as industrial property, or to state the same proposition conversely, the land is wholly

unfit for residential uses and/or development. In substantiation of these claimed propositions, defendant points out that testimony was given to the effect that the land is of poor grade, unfit for farming, is swampy and low to the extent of 5 or 6 acres and is traversed to the rear by a railroad. As previously observed, some of the low and swampy land in its present state at least, is no more adaptable for commercial use than for residential. If the defendant sustains a financial loss, it will be because he built a machine shop on the premises contrary to the zoning ordinance and under the guise of building a legitimate tool shed for agricultural purposes.

The court agrees with defendant's statement of the general rule which the court has sought to apply in this case, namely:

"That a zoning ordinance must be reasonable and its reasonableness must be determined from the circumstances of each particular case and that it must bear a real or substantial relationship to present public health, safety, morals and general welfare."

The idea or emphasis upon the *present* is embodied in the rule laid down in *Gust* v. *Township of Canton,* 342 Mich 436, 442, wherein the court said:

"The test of validity is not whether the prohibition may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, *but whether it does so now.*" (Emphasis supplied.)

The defendant understandably complains that:

"No provision is made in the zoning ordinance of West Bloomfield township for the location of industry. This is true of both the original zoning ordinance and the zoning ordinance enacted in 1954. The township, in effect, prohibits industry." (Reference is made to page 2 of the defendant's brief.)

The defendant takes the position that the Supreme Court has said in substance, in *Gust* v. *Township of Canton, supra,* 439, that a township is not at liberty to outlaw or prohibit any legitimate business and that therefore an ordinance which prohibits industry is illegal and void and that industry may therefore be located at any place in the township where land can be procured.

This Court cannot agree that the rule laid down in the last-cited case is as broad as the defendant asserts it to be. It is the court's opinion, as aforesaid, that because of the location and character of the defendant's property and the location and character of the surrounding property, that the zoning of the defendant's property is reasonable. If the character of the surrounding area were different, the *Gust Case* would have application. The court's impression of the *Gust* v. *Canton Case* is that the authors of the zoning ordinance were *anticipating situations or conditions in the future,* rather than having their ordinance and its provisions predicated upon the then-present and immediate situations and relationships. Reference is again made to the quotation from said case.

Plaintiff is entitled to a permanent injunction restraining the defendant and all of his agents and employees from carrying on a manufacturing business or in any way violating the terms of the zoning ordinance of the township of West Bloomfield on the above-described lands.

A decree may be entered which will implement and give effect to the foregoing opinion.

Costs may be taxed pursuant to the rules governing such.

\* \* \*

We very much doubt that we could improve upon the fairness of statement or the careful reasoning of

the foregoing opinion and we therefore adopt it as our own. Decree affirmed, with costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.