STURDY HOMES, INC. *v.* REDFORD TOWNSHIP

1. ZONING—ORDINANCES—VALIDITY.

   A zoning ordinance, to be valid, must bear a direct and substantial relation to the objectives of police power, and to the preservation of the public health, safety, morals, and general welfare, of the community as a whole.

2. ZONING — ORDINANCES — VALIDITY — PRESUMPTIONS — BURDEN OF PROOF.

   A zoning ordinance is presumed to be valid and the attacking party has the burden of establishing affirmatively that it has no real or substantial relation to public health, morals, safety, or general welfare.

3. ZONING—ORDINANCES—VALIDITY—DEBATABLE QUESTION.

   Validity of a zoning ordinance must be determined on the facts and circumstances in each case and more than a debatable question regarding its validity is required before the courts will declare it invalid.

4. ZONING—ORDINANCES—VALIDITY—CHARACTER OF DISTRICT.

   The character of a zoned district, its peculiar suitability for particular uses, the conservation of property values, the general trend and character of building and population development, the unsuitability for residential purposes, lack of market for residential purposes, and whether the property will become "dead" or nonincome-producing, are elements to be considered in determining the validity of a zoning ordinance.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning § 14 *et seq.*
[2, 3, 6]  58 Am Jur, Zoning § 16.
[4]  58 Am Jur, Zoning § 32 *et seq.*
[5]  58 Am Jur, Zoning §§ 21, 22.

5. ZONING—FLOOD-PLAIN ORDINANCE—APPLICATION TO PROPERTY—
   REASONABLENESS.

   Application of a flood-plain zoning ordinance to plaintiff's prop-
   erty was unreasonable and therefore confiscatory, where the
   trial court found that although its land was located within
   the area zoned as a flood plain and that area had suffered
   from two serious floods, the plaintiff's land had never been
   flooded and no danger to the public health, safety or welfare
   from flooding involved plaintiff's land, and where the zoning
   ordinance effectively limited the plaintiff to use of the land
   for single-family detached dwellings, but the flood-plain zoning
   forbade use for human habitation.

6. ZONING—ORDINANCES—CONSTITUTIONALITY.

   Finding of the trial court that a flood-plain zoning ordinance
   was unconstitutional *per se* was in error where the only proofs
   presented related to plaintiff's land, as to which the ordinance
   was properly found to be unconstitutional, and where the or-
   dinance had permitted purposes reasonably related to the public
   health, safety, and welfare.

Appeal from Wayne, Neal Fitzgerald, J. Sub-
mitted Division 1 November 12, 1970, at Detroit.
(Docket No. 8853.) Decided January 22, 1971.

Complaint by Sturdy Homes, Inc., against Red-
ford Township, its supervisor, and its director of
public works for mandamus to compel issuance of
a building permit. Judgment for plaintiffs. De-
fendants appeal. Affirmed in part and reversed in
part.

*David E. Kull,* for plaintiff.

*Kasoff, Young, Gottesman & Kovinsky (Charles
Rubinoff,* of counsel), for defendants.

Before: McGREGOR, P. J., and HOLBROOK and
O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6, § 23 as amended in
1968.

O'HARA, J.   Plaintiff-appellee brought this action by filing a complaint and order to show cause why a writ of superintending control should not issue directing the building department of Redford Township to issue a building permit to appellee to construct homes on property it owned.   Appellant township has refused on the ground that residential homes are not permitted on the property in question under the zoning ordinance.   Appellee's property lies in an area zoned R–1 and designated as a flood control area.   The pertinent part of the ordinance[1] is as follows:

"Article IV R–1   Family Residential District.

"Section 4.01   Principal uses permitted.

"In all R–1 District no building or land, except as otherwise provided in this ordinance, shall be erected or used except for one or more of the following specified uses:

"(1)  One-family detached dwellings.

"(2)  Publicly owned and operated parks, libraries, parkways, and recreational facilities.

"(3)  Accessory building or uses, customarily incident to any of the above permitted uses, when located on the same zoning lot and subject further to the provisions of Article III, Sec. 3.11.   The parking of not more than one (1) commercial vehicle of a rated capacity not exceeding three-quarter (3/4) ton shall be considered a legal accessory use provided such vehicle is stored or parked in an enclosed building, and provided further that such vehicle is the property of, or operated by, a resident of the zoning lot.   One (1) private garage per residential zoning lot shall be considered a legal accessory use provided such building shall not house more than three (3) motor vehicles."

An amendment to the ordinance provides:

---

[1] Redford Township ordinances, No 152, §§ 3.23, 4.01.

"Section 3.23 Flood Plain Controls

"Those areas designated as flood plains by the Township of Redford shall be mapped and superimposed on the official Zoning District Map so as to delineate the flood plain as it relates to each district it crosses.

"Flood plains shall be so restricted so as to prohibit any structure wherein human habitation may be provided, for either a place of residence or employment:

"(1) The following uses shall be permitted to occur within the flood plains:

"(a) The open space portion of any use district within which the flood plain is located, providing that no structure other than grade parking, be provided.

"(b) For residential districts the flood plain may be used for computing density and may, therefore, be used for yard and park areas.

"(c) Temporary uses may be permitted by the Board of Appeals in conformity with granting of temporary permits as specified in Section 19.07."

The trial court filed an opinion and an addendum thereto. Both found for plaintiff. Each, however, was based upon a different legal concept.

The first opinion recited as findings of fact that while the land in question was located within the area zoned as a flood plain, and while the area had suffered from two serious floods, the particular land in question had never been flooded and no danger to the public health, safety or welfare from flooding involved plaintiff's land. On this basis, the trial court found that the application of the flood-plain ordinance to plaintiff's property was unreasonable and, therefore, unnecessary.

After defendant had filed its claim of appeal, the trial court filed the "Addendum Opinion". This opinion ruled that the flood-plain ordinance was

unconstitutional on its face as confiscatory and a taking of private property without just compensation, contrary to Const 1963, art 10, § 2.

Because all courts are justly loath to consider the constitutionality of acts of coordinate branches of government unless compelled to do so by necessity, we first turn our attention to the propriety of the first opinion of the trial court.

The defendants challenge the findings of facts by the trial court, referring to these findings as the "Basic Error of the Trial Court". In support of this assertion, they quote at length from the transcript. The testimony quoted is, of course, supportive of defendants' position.

Our standard of review in these cases is somewhat unusual. It is spelled out in *Alderton* v. *City of Saginaw* (1962), 367 Mich 28, 33, 34:

"We have held that a zoning ordinance to be valid must bear a direct and substantial relation to the objectives of police power, the preservation of the public health, safety, morals, and general welfare, of the community as a whole (*Long* v. *City of Highland Park* [1950], 329 Mich 146); that the attacking party has the burden of establishing affirmatively that the ordinance has no real or substantial relation to public health, morals, safety, or general welfare and that the ordinance is presumed valid (*Austin* v. *Older* [1938], 283 Mich 667); that each case must be determined on its own facts and circumstances (*Moreland* v. *Armstrong* [1941], 297 Mich 32), and that in order for the courts to find action of the legislative body invalid, more than a debatable question is required (*Brae Burn, Inc.* v. *City of Bloomfield Hills* [1957], 350 Mich 425).

"The debatable question rule as presented in *Brae Burn, supra,* does not mean such question exists merely because there is a difference of opinion between the zoning authority and the property own-

er in regard to the validity of the ordinance. If this were the case, no ordinance could ever be successfully attacked.

"In determining validity of an ordinance we give consideration to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development (*Grand Trunk W. R. Co.* v. *City of Detroit* [1949], 326 Mich 387); unsuitability for residential purposes (*Ritenour* v. *Township of Dearborn* [1949], 326 Mich 242); lack of market for such purpose (*Long* v. *City of Highland Park, supra*), and whether the land will become 'dead land' or nonincome-producing land without residential value (*Janesick* v. *City of Detroit* [1953], 337 Mich 549).

"In zoning appeals we give weight and careful consideration to the findings of the lower court who heard the testimony, saw the exhibits and, in most instances, is familiar with the area in dispute."

In *Alderton* v. *City of Saginaw, supra,* the Supreme Court affirmed the finding by the trial court that a zoning ordinance was unconstitutional in its application to plaintiff's property.

In the instant case, that same conclusion of the trial court is amply supported by the record. It is uncontested that the plaintiff's land has never flooded and is separated from the flood area by a shallow ditch which plaintiff has prepared to repair, clean and line with concrete. The claims of the defendant are, essentially, merely that nearby areas flood. We cannot reverse the determination of the trial court that the danger to plaintiff's property is not so great as to justify a zoning ordinance which deprives that plaintiff of any use of his property. And that surely would be the result here if the ordinance were held to be reasonable as to plaintiff's land.

As noted by counsel on oral argument, plaintiff is limited, in practical effect, to the use of his property for single-family detached dwellings. The two other subdivisions controlling use afford him cool comfort. He can't very well create publicly-owned and operated parks, libraries, parkways and recreational facilities. Nor can he utilize the "accessory uses   *   *   *   incident to the above permitted uses" clause, for the relatively simple reason they have nothing to which to be "accessory".

He can't build the permitted "one-family detached dwellings" because the flood plains control section prohibits "  *   *   *   any structure wherein human habitation may be provided   *   ·*   *   ".

This is indeed a classic case in which the application of the zoning ordinance to the particular property amounts to expropriation.

But, argues counsel for the township, in a curiously mixed metaphor, "Plaintiff is no Cinderella in Wonderland; he bought with the knowledge of the limitations on use and he so bought very advantageously". The point is in dispute. An amendment to the original ordinance which resulted in the virtual non-user of plaintiff's land was passed in March, 1967. Plaintiff purchased the property a month earlier in the same year. Cinderella or no, plaintiff is entitled to his constitutional protection.

As we held in *Reid* v. *City of Southfield* (1967), 8 Mich App 553, 558:

"The cardinal precept for appellate review of cases challenging the constitutionality of a zoning ordinance is that of determining the 'reasonableness' of the ordinance. Where an ordinance bears no relationship to the health, safety, convenience, and general welfare of the inhabitants, and the injury to the property owner contesting it is estab-

lished, the ordinance has been found constitutionally infirm."

Insofar as his original opinion is concerned, we affirm the learned trial judge.

We next consider his "Addendum Opinion" holding the ordinance unconstitutional *per se,* as applied to all property in the township.

With this we cannot agree. The proofs of plaintiff related to his property. We cannot find in the wording of the ordinance inherent unconstitutionality. The purposes are permitted purposes. They are reasonably related to the public health, safety and welfare. Further constitutional infirmity, if any, must abide the required showing made by plaintiff herein.

The judgment of the trial court is affirmed in part and reversed in part. As to the particular property of plaintiff here involved, the finding that the ordinance is unreasonable, hence confiscatory and constitutionally infirm as to plaintiff's property is affirmed.

The holding in the "Addendum Opinion" of unconstitutionality *in toto* is reversed.

No costs, neither party having prevailed in full.

All concurred.