## KROPF v CITY OF STERLING HEIGHTS

### OPINION OF THE COURT

1. ZONING—CONSTITUTIONAL LAW—VALIDITY OF ORDINANCE—REASON-
ABLENESS.

> The constitutional validity of a zoning ordinance must be deter-
> mined on the basis of its reasonableness measured by present
> conditions, but a court is not precluded from also considering
> future developments as improvements in the area which are
> imminent or a factual certainty.

2. ZONING—CONSTITUTIONAL LAW—VALIDITY OF ORDINANCE—FUTURE
CONDITIONS.

> Whether future conditions which the municipality asserts will
> render its zoning ordinance reasonable and proper may be
> considered in measuring the present reasonableness of the
> ordinance must be determined on the basis of the certainty of
> those conditions.

3. ZONING—CONSTITUTIONAL LAW—VALIDITY OF ORDINANCE—FUTURE
CONDITIONS.

> The harm which might befall the community in the future if the
> use proposed by the property owner is permitted because
> present conditions do not justify the ordinance's prohibition of
> the proposed use must be considered in determining the consti-
> tutional reasonableness of the zoning ordinance.

4. ZONING—CONSTITUTIONAL LAW—VALIDITY OF ORDINANCE—FUTURE
CONDITIONS.

> The expected removal of a sewage treatment plant and public
> works garage from an area zoned exclusively single-family
> residential, whose existence in the area is inconsistent with
> nearby uses and makes the zoning ordinance unreasonable

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning §§ 21, 22.
[2, 3] 58 Am Jur, Zoning § 14 *et seq.*
[4–7, 11] 58 Am Jur, Zoning §§ 55, 56.
[8] 58 Am Jur, Zoning §§ 216, 217.
[9, 10] 58 Am Jur, Zoning § 27.

under present conditions, cannot be considered as a future condition which would render the ordinance unreasonable where the removal of the sewage plant is under the control of an agency independent of the zoning authority and no alternate location for the garage has yet been selected because the removal is entirely indefinite, uncertain and speculative.

5. ZONING—VALIDITY OF ORDINANCE—EXCLUSION OF MULTIPLE-FAMILY DWELLINGS—BURDEN OF PROOF.

The municipality has the burden of proving the validity of a zoning ordinance which excludes multiple-family dwellings.

6. ZONING—VALIDITY OF ORDINANCE—MASTER PLAN.

A master plan is evidence of reasonableness, but the fact that a zoning ordinance excluding multiple-family dwellings use was adopted as part of a valid master plan is not sufficient alone to sustain the burden imposed on a municipality of proving the validity of an ordinance which excludes multiple-family dwellings use.

7 ZONING—VALIDITY OF ORDINANCE—HARM TO COMMUNITY.

An ordinance zoning an area exclusively single-family residential and excluding multiple-family dwellings is unconstitutional where the city planner testified that multiple-family dwelling use would not be detrimental to the community and there is no reason to believe that the use would not be compatible with planned residential development in the area.

8. ZONING—PURCHASER WITH KNOWLEDGE OF RESTRICTIONS.

One who purchases property with knowledge of zoning restrictions may challenge the restrictions' constitutionality.

DISSENT BY V. J. BRENNAN, J.

9. ZONING—VALIDITY OF ORDINANCE—PRESENT RELATIONSHIP.

*The rule that the validity of a zoning ordinance depends upon its present relationship to a valid purpose is something less than an absolute because of the emphasis in zoning upon planning for future conditions.*

10. ZONING—VALIDITY OF ORDINANCE.

*The validity of a zoning ordinance should appropriately be determined upon the basis of the interrelationship between the difficulties created for the property owner, the likelihood of anticipated changes in conditions in the area and the expected time lag before the changes occur, and the reasonableness of*

*the zoning plan as a whole rather than considering isolated parcels of land.*

11. Zoning—Validity of Ordinance.

*Plaintiffs, who proposed to develop multiple-family dwellings in an area zoned for single-family residential dwellings, have not sustained their burden in attacking the reasonableness of the zoning ordinance by showing that their land is not presently suitable for single-family dwellings where they made no challenge to the validity of the zoning plan as a whole and where anticipated change in conditions in the area, whose fruition in the very near future is realistic and certain, would make the plaintiffs' land extremely attractive and desirable for single-family dwellings.*

Appeal from Macomb, George R. Deneweth, J. Submitted Division 2 February 4, 1972, at Detroit. (Docket No. 11232.) Decided May 25, 1972. Leave to appeal granted, 388 Mich 764.

Complaint by William E. Kropf and Sanford Meyer against the City of Sterling Heights to have the defendant's zoning ordinance declared unconstitutional as applied to plaintiffs' property and to have plaintiffs' property rezoned for multiple-residential purposes. Judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Michael D. Schwartz* and *Michael H. Feiler,* for plaintiffs.

*O'Reilly & Cornell,* for defendant.

Before: Bronson, P. J., and V. J. Brennan and O'Hara,* JJ.

Bronson, P. J. Plaintiffs are purchasers of an irregularly shaped parcel of land, some ten acres in area, located within the City of Sterling Heights. The parcel in question is zoned exclu-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sively for single-family residential dwellings. The present action arises out of plaintiffs' efforts to have the zoning ordinance declared unconstitutional as to their property and to have their property rezoned for multiple residential purposes. Upon trial of this cause, the trial judge found that plaintiffs had failed to demonstrate the nonsuitability of their property for single-family use and dismissed their complaint.

Plaintiffs have taken this appeal asserting two bases of error in the trial court's ruling: that the trial court allowed a municipality to justify its zoning based upon future, as opposed to present, conditions, and that the trial court was unduly swayed by the fact that plaintiffs knew of the zoning restrictions at the time they purchased the property.

For the reasons hereinafter set forth, we perceive the trial judge to have misapplied the law governing such determinations and we must reverse the lower court's decision.

The evidence presented at trial was clear and unequivocal. Plaintiffs' parcel is located in close proximity to the sewage treatment plant owned and operated by the defendant. It is likewise in close proximity to the Sterling Heights Department of Public Works Garage. Additionally, the southern portion of the parcel lies within a flood plain area and the southwesterly portion of the property is adjacent to a swamp area which extends into the subject property itself. Trial testimony showed that the sewage treatment plant generally, along with the other problems mentioned, exerts a depressing effect upon the value of this property for single-family residential development. We believe that the crucial testimony in plaintiffs' case was the testimony of defendant's city planner:

"*A. [By Mr. Billette]:* The detrimental factors here
are long range planning with the city have, within, I
would say one year, possibly two, maybe three years,
could be overcome very well with the development of
the surrounding property and this property.

"*Q.* Sir, what you are telling us now is that in the
future this would be desirable, is that correct? Is that a
fair statement?

"*A.* Yes.

"*Q.* What about today, sir? Is it desirable for single-
family residential, yes or no?

"*A.* Today, no.

\* \* \*

"*The Court:* He said, I think, if I remember his
testimony correctly, he said at the present time it was
not desirable for single family.

"*Q.* You state that it is not desirable because of the
detrimental reasons you mentioned?

"*A.* That exists today, yes."

Defendant asserts that these nearby inconsistent
uses are only temporary, that the sewage plant
will be closed on completion of a new sanitary
sewer system and that the City of Sterling Heights
is in the process of seeking an alternate site for its
department of public works garage. From these
contentions we believe the crucial issue in this
case is pointedly raised: whether a city may re-
strict the use of property based upon circum-
stances which it believes will occur in the future
but have not yet occurred at the time of trial of
the ordinance.

The rule of law governing such problems is well
settled: zoning, to be valid, must be reasonable,
and its reasonableness must be measured by pres-
ent conditions. The rule was expressly stated in
*Gust v Township of Canton,* 342 Mich 436, 442
(1955):

"The test of validity is not whether the prohibition

may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, but whether it does so now."

This rule has been likewise stated in *Comer v Dearborn,* 342 Mich 471 (1955); *West Bloomfield Twp v Chapman,* 351 Mich 606 (1958); *Roll v City of Troy,* 370 Mich 94 (1963); and *Biske v City of Troy,* 381 Mich 611 (1969). In *Biske v City of Troy, supra,* the defendant municipality argued that its restrictive ordinance should be measured in light of the development expected to occur in the future rather than by existing circumstances by which the ordinance failed to demonstrate any relationship to public health, safety, welfare or morals. The Court, in setting forth the present conditions rule, stated:

"Meanwhile the hapless property owner waits, pays taxes and hopes that either the anticipated development will come shortly or that the zoning authority will release to some extent its griphold of his property right." 381 Mich at p 617.

While the rule is clear we cannot believe that this Court is required to close its eyes to developments or improvements within the municipality which are imminent or a factual certainty. The measure of such consideration must be the certainty or speculative nature of the "future conditions" which the municipality asserts will render its ordinance reasonable and proper. Furthermore, we must be sensitive to the harm which might befall the community in the future if the use proposed by the property owner is permitted because circumstances do not yet justify the prohibition.

As to the speculative nature of the "future conditions" in this case, we are not unmindful of

the city's good faith effort to remove its sewage treatment plant from the property adjoining plaintiffs'. However, this effort is not within the city's own power but rather must await completion of a sewer system which is under construction by another and independent governmental agency. Relocation of the department of public works garage is entirely indefinite and uncertain. When this cause was tried, no alternate site had even been selected. Based upon such considerations, we are not satisfied that defendant city has demonstrated the certain fact of removing inconsistent nearby uses which apparently, almost without dispute, render its present zoning ordinance unreasonable. While such facts may truly come to pass eventually, we do deem it constitutionally impermissible to cast the onus of the wait on the property owner who, in the meanwhile, cannot develop his property as a place for people to live.

This Court recently made it clear that where multiples are involved, the municipality has the burden of proving the validity of ordinances which seek to exclude them. *Simmons v Royal Oak,* 38 Mich App 496 (1972). The fact that the zoning for this property was adopted as part of a valid master plan is not enough to sustain that burden. While a master plan is evidence of reasonableness, it by itself is not conclusive. While we do not impose the burden on defendant retroactively, the record in this case makes it clear that the property in question cannot be developed in strict accord with the master plan.

We cannot perceive that any harm will come to the community by allowing plaintiffs' proposed multiple residential development. When questioned as to this point, defendant's city planner stated:

*"Q. (Mr. Schwartz [plaintiffs' counsel], continuing):* Is
it your opinion, Mr. Billette, that the construction of
multiple dwelling on this site would not be detrimental
to the promotion of health, welfare and safety of the
community then?

*"A.* I believe that could be.

*"Q.* It could be?

*"The Court:* Wait a minute. I do not understand the
answer. The question was, 'Do you think that the
development of multiple dwelling on this particular
property would not be detrimental to the health, safety,
welfare of the community?'

*"A.* The construction would not be detrimental.

*"The Court:* It would not be detrimental?

*"A.* Right."

In light of this Court's holding in *Bristow v Woo-
dhaven,* 35 Mich App 205 (1971), it would be
difficult to assume that such multiple residential
development would be "harmful" to the commu-
nity.

Indeed, there is no reason to believe that plain-
tiffs' planned development will not be compatible
with planned residential development in the area.
We do not accept the myth that multiple dwellings
are inherently incompatible with single-family res-
idences. Multiples are a legitimate form of housing
used by large segments of our population which
municipalities must rationally integrate into their
planned growth and development. *Baker v Algo-
nac,* 39 Mich App 526 (1972). It should be made
clear that our holding in this case is based solely
on the particular situation of the property in
question. It should not be taken as an invitation to
undermine a community's planned growth through
the use of a properly adopted master plan. The
defendant's ordinance is unconstitutional only in
its application to plaintiffs' property.

Plaintiffs also raised the question of whether one

who purchases with knowledge of zoning restrictions may nonetheless be heard to challenge the restrictions' constitutionality. That the answer is in the affirmative is well settled. See *Sturdy Homes v Redford Township,* 30 Mich App 53 (1971).

For the reasons herein set forth, the decision of the trial court is reversed and this cause is remanded for entry of an order consistent with this opinion.

O'HARA, J., concurred.

V. J. BRENNAN, J. *(dissenting).* The major issue in this case is whether a city may base its zoning on circumstances which it believes will occur in the future. The case thus puts to this Court the obligation to attempt to resolve the dilemma created by the recurrent statement in this state's case law that, to be valid, zoning must bear a *present* relationship to the "public health, safety, morals or general welfare" and the heavy emphasis on planning for the future in this state's zoning laws. This dichotomy has yet to be adequately resolved.

The extent of the emphasis on planning in our zoning laws is apparent from even the most cursory reading of the relevant statutes. The statutes conferring the authority to enact zoning regulations on municipalities (MCLA 125.581, *et seq;* MSA 5.2931, *et seq),* counties (MCLA 125.201, *et seq;* MSA 5.2961[1], *et seq),* and townships (MCLA 125.271, *et seq;* MSA 5.2963[1], *et seq),* all compel the relevant governmental unit to zone in accordance with a plan and to consider, among other factors, "the general trend and character of building and population development".[1] It is therefore

_____

[1] See MCLA 125.581; MSA 5.2931; MCLA 125.203; MSA 5.2961(3); MCLA 125.273; MSA 5.2963(3).

obvious that *all* zoning in this state must be in accordance with some sort of plan. Furthermore, the requirement of the existence of a plan compels those authorized to enact zoning regulations to consider factors which will arise in the future.

The statutory emphasis on planning may also be found in the statutes which authorize the creation of planning commissions. Such planning commissions may be established by municipalities (MCLA 125.31, *et seq;* MSA 5.2991, *et seq),* counties (MCLA 125.101, *et seq;* MSA 5.1192[1], *et seq),* townships (MCLA 125.321, *et seq;* MSA 5.2963[101] *et seq),* and furthermore two or more local governmental units may establish regional planning commissions (MCLA 125.11, *et seq;* MSA 5.3008[1], *et seq).* Such municipal and county commissions are charged with developing a plan for,

"The general purpose of *guiding and accomplishing* a coordinated, adjusted, and harmonious *development* of the municipality and its environs which will, in accordance *with present and future needs,* best promote health, safety, morals, order, convenience, prosperity, and general welfare, as well as *efficiency and economy in the process of development;* including, among other things, adequate provision for traffic, the *promotion* of safety from fire and other dangers, adequate provision for light and air, the *promotion* of the healthful and convenient distribution of population, the *promotion* of good civic design and arrangement, wise and efficient expenditure of public funds, and the adequate provision of public utilities and other public requirements." (Emphasis added.) MCLA 125.37; MSA 5.2997. See, also, MCLA 125.104; MSA 5.1192(4).

Poised against this statutory insistence that those who zone must consider the future is the requirement, frequently stated in the opinions of our Supreme Court, that zoning must bear a *present* relationship to a valid purpose.

These two seeming opposites are not as impossible to reconcile as may first appear. In most of the cases in which the "present relationship" requirement has been advanced, the challenged zoning has been of a "speculative character". In *Gust v Township of Canton,* 342 Mich 436, 440 (1955), the anticipated changes on which the zoning was based were expected to develop within 20 to 25 years. In discussing the basis for the challenged zoning in *Comer v Dearborn,* 342 Mich 471, 476 (1955), the Supreme Court concluded "that no such change may reasonably be expected". Again in *Biske v City of Troy,* 381 Mich 611, 617 (1969), the standards condemned by the Court were again characterized as "speculative". Furthermore, in that same opinion, the Court stated at p 616:

"The mandatory requirement, that 'The commission shall make and adopt a master plan for the physical development of the municipality, including any areas outside of its boundaries which, in the commission's judgment, bear relation to the planning of the municipality' (see PA 1931, No 285, § 6 [CL 1948, § 125.36], as amended by PA 1962, No 138 [Stat Ann 1969 Cum Supp § 5.2996]), is of no little significance when courts are called upon to consider the reasonableness of zoning which depends upon the predictions of such a plan and the need for reasonable stability thereof once the plan has been adopted pursuant to the procedure required by section 8 of the act (CL 1948, § 125.38 [Stat Ann 1958 Rev § 5.2998])."

And finally, the Court in *West Bloomfield Twp v Chapman,* 351 Mich 606, 615 (1958), while reasserting the "present relationship" rule, delivered the following praise for city planning:

" 'The benefits to be derived by cities adopting such regulations[2] may be summarized as follows: They at-

---

[2] Systematic development.

tract a desirable and assure a permanent citizenship; they foster pride in and attachment to the city; they promote happiness and contentment; they stabilize the use and value of property and promote the peace, tranquility, and good order of the city. We do not hesitate to say that the attainment of these objects affords a legitimate field for the exercise of police power. He who owns property in such a district is not deprived of its use by such regulation. He may use it for the purposes to which the section in which it is located is dedicated. That he shall not be permitted to use it to the desecration of the community constitutes no unreasonable or permanent hardship and results in no unjust burden.' "

Therefore, the "present relationship" requirement is something less than an absolute.

The rule asserted by the majority does not condemn planning for the future, but rather the abuse of the authority to plan by relying on "speculative" factors. Whenever a municipality plans it must look to the future; in so doing it is unavoidable that certain property owners will be subjected to at least temporary inconvenience. In evaluating cases of this nature, it would be appropriate for the courts of this state to consider the interrelationships among several factors, rather than apply one general maxim. The relevant factors should be the difficulties created for the property owner; the likelihood of the anticipated changes and the expected time lag before the changes occur; and, finally, the courts should look to the reasonableness of the plan as a whole rather than considering isolated parcels of land.

Considering those factors in relationship to the case at hand, we find that plaintiffs have made no challenge to the validity of the plan as a whole; there is no indication that the City of Sterling Heights has sought to exclude or preclude develop-

ment of property for multiple-family residential purposes. We find that the time lag between the present and the realization of certain of the anticipated changes is relatively short. The offensive sewage treatment plant should be phased out before this opinion appears in the advance sheets. (To disparage such progress, as the majority does, on the basis that the necessary construction is not under the control of defendant city is a genuine distinction without a trace of difference.) Furthermore, the Huron-Clinton Metropolitan Authority is and has been acquiring substantial property in the area for a large park development.

I am of the opinion that such developments are both realistic and certain. On the basis of these, and other, developments, I feel that plaintiffs' land would, in the very near future, be extremely attractive and desirable for the purpose for which it is zoned. On this basis, I would hold that the property owners have not sustained their burden in attacking the reasonableness of the zoning and would, therefore, affirm the judgment of the court below.