BISKE *v.* CITY OF TROY.

1. ZONING—ORDINANCE—REASONABLENESS.

The reasonableness of a zoning ordinance must be determined upon the facts of each case.

2. APPEAL AND ERROR—EQUITY—FINDINGS OF FACT.

A trial judge's findings of fact in an equity case are given considerable weight on review since the trial judge is in a better position to test the credibility of the witnesses.

3. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.

The Supreme Court will not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, it reaches the conclusion that it would have arrived at a different result had it been in the position of the trial court.

4. ZONING—MUNICIPAL CORPORATIONS—MASTER PLAN—EVIDENCE.

A municipal master plan only informally adopted is accorded less evidentiary value in a case in which the reasonableness of a zoning ordinance is in question than one formally adopted by the municipality as provided by statute (CL 1948, § 125.36, as amended by PA 1962, No 138).

5. SAME—ORDINANCE—VALIDITY.

The test of validity of an ordinance zoning plaintiffs' property to prohibit certain uses of that property is not whether the prohibition may at some time in the future bear a real and substantial relationship to the public health, safety, morals, or general welfare, but whether it does so now.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning §§ 21, 22.
[2, 3] 5 Am Jur 2d, Appeal and Error §§ 822, 839.
[4] 58 Am Jur, Zoning § 27.
[5] 58 Am Jur, Zoning §§ 14, 26.
[6] 58 Am Jur, Zoning §§ 21, 22, 26, 27.
[7] 20 Am Jur 2d, Costs §§ 15, 16.

6. SAME—ORDINANCE—MASTER PLAN—REASONABLENESS.

Ordinance zoning plaintiffs' land as restricted to office building development was properly held invalid by trial judge as not bearing a direct and substantial relationship to public health, morals, safety, and general welfare where such zoning was pursuant to a master plan not yet formally adopted by the city, and the area in question was largely vacant with numerous nonconforming uses evident.

7. COSTS—ZONING—NEITHER PARTY PREVAILING IN FULL.

No costs are awarded on appeal in case of city zoning ordinance being declared invalid where decision of Court of Appeals is affirmed in part and reversed in part, affirming trial court judgment, neither party prevailing in full.

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., and McGregor and J. H. Gillis, JJ., reversing in part and affirming in part Oakland, Pratt (Philip), J. Submitted November 14, 1968. (Calendar No. 16, Docket No. 51,797.) Decided April 9, 1969.

6 Mich App 546, affirmed in part and reversed in part.

Complaint by George Biske, deceased, succeeded by Elsie Biske and H. J. Hall, Jr., owners of certain property in the City of Troy, seeking a determination that the zoning of a portion of that property by the City of Troy was invalid and requesting that the trial court order the city to allow the construction of a gasoline station on part of the property. The trial court held the zoning ordinance invalid, but did not order the allowance of the specific use requested. Plaintiffs appealed and defendant filed a cross-appeal. The Court of Appeals reversed the holding of invalidity and affirmed the trial court's refusal to order the allowance of the use requested. Plaintiffs appeal. Affirmed in part and reversed in part, judgment of circuit court affirmed.

*Samuel W. Barr,* for plaintiffs.

*Burke & Sawyer,* for defendant.

PER CURIAM. Plaintiffs' complaint, filed January 21, 1964, presents another zoning cause against the city of Troy. The cause alleged is essentially equitable in nature and differs in that regard from *Brae Burn, Inc.,* v. *City of Bloomfield Hills* (1957), 350 Mich 425, a case we shall presently consider. Here the equitable features of plaintiffs' cause are of importance in conjunction with our monotonously repeated precepts that "in determining the reasonableness of a zoning ordinance each case must be determined upon its own facts"[1] and that considerable weight is given to the findings of trial judges upon review of zoning cases presenting equitable issues. To quote Justice T. M. KAVANAGH, writer of the Court's opinion in the *Christine Case* (pp 517, 518):

"We hear and consider chancery cases *de novo* on the record on appeal. *Johnson* v. *Johnson* (1961), 363 Mich 354; *Osten-Sacken* v. *Steiner* (1959), 356 Mich 468; *Futernick* v. *Cutler* (1959), 356 Mich 33; *A & C Engineering Co.* v. *Atherholt* (1959), 355 Mich 677; *Straith* v. *Straith* (1959), 355 Mich 267; *Ball* v. *Sweeney* (1958), 354 Mich 616. This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different

[1] *Christine Building Co.* v. *City of Troy* (1962), 367 Mich 508, 516; and *Roll* v. *City of Troy* (1963), 370 Mich 94, 96.

result had we been in the position of the trial judge. The trial judge here found, after listening to the witnesses testify and examining the exhibits, that the plaintiffs had shown the zoning ordinance to be unreasonable and arbitrary. After an examination of the entire record, we feel the trial judge reached a correct conclusion."[2]

Upon proofs received and findings made, judgment entered in circuit upholding plaintiffs' complaint that Troy's zoning ordinance could not be applied validly to the cornermost portion (200 feet by 150 feet) of their 660-by-330-foot parcel which forms the northwest corner at the intersection of Livernois and Big Beaver roads. On appeal Division 2 reversed as to this controlling issue (*Biske* v. *City of Troy* [1967], 6 Mich App 546).

When plaintiffs applied here for leave to appeal our attention arrived at concentration upon Division 2's thought that "In this whole area of city planning and urban renewal, the courts may have to re-evaluate their predilection of looking to precedents of the past" and that "The fact that it [Troy's master plan] has been adopted formally or informally by a responsible political body is of itself evidence of its reasonableness." (pp 551, 552.) There is thus presented the issue as to the impact of a projected—but not legally adopted and hence whimsically malleable—master plan upon zoning cases.

In the first place it is clear, as observed by Judge Pratt (*post* at p 622), that the proposed master plan of Troy, upon which the ordinance tested here was based, has not been adopted as provided by statute. CL 1948, § 125.38 (Stat Ann 1958 Rev § 5.2998). In the second place *Brae Burn, Inc.*, v. *City of Bloom-*

---

[2] Justice KELLY, writer of the prevailing opinion for affirmance of the circuit court's decree in *Bowman* v. *City of Southfield* (1966), 377 Mich 237, 250, 251, opened his opinion with this quotation of the *Christine Case*. *Christine, Roll,* and *Bowman* were zoning cases. Each was instituted to obtain equitable relief.

*field Hills,* 350 Mich 425, cited below as supporting a proposition that "The reasonableness of a particular zoning must also be considered in the light of planned area development of a political body having the authority to plan and implement such future development" (6 Mich App 546, 552), provides for the claimed application of this ordinance no such underpinning.

Division 2 has, we conclude, missed the point as regards the evidentiary weight of Troy's proposed master plan. Before we may credit any such plan as being "of itself evidence of its reasonableness", we must first determine whether that plan is *in fact* a validly adopted master plan. Here we agree with plaintiffs' brief-declared statement that "If a 'master plan' is going to be adopted by a community, such plan should at least be adopted formally by the community, and the community be given an opportunity to pass on it in accordance with the statute."

Overlooking the fact that 4 members only of the Court indorsed the opinion of *Brae Burn,* we find that the case was one of *mandamus* against the city of Bloomfield Hills and certain of its officials to enforce the issuance of a building permit, also that no "master plan" was involved but only the municipal zoning ordinance.

Justice TALBOT SMITH wrote (p 438 of *Brae Burn*):

"Tested by these established principles it is clear beyond question that it lies within the competence of the city of Bloomfield Hills to plan its future growth and development, that its legislative body had authority to act, and that, so far as here questioned, the requirements of administrative and procedural due process have been observed."

By the context of the opinion this can only refer to the zoning ordinance of the city. As for the case

at bar, the introduction of an unadopted "master plan" as evidence of reasonableness of the application of Troy's zoning ordinance (here "The most significant exhibit" according to Judge Pratt), is an innovation. The shopping center and the office complex hoped for in the master plan may never develop. Nor may we presume or assume that they have come into being during the interval of years which have elapsed since the circuit court's judgment was entered. Perhaps the possibility should be considered in a zoning case, but that does not authorize a holding that such a plan (not the zoning ordinance the city would apply) "is of itself evidence of its reasonableness."

The mandatory requirement, that "The commission shall make and adopt a master plan for the physical development of the municipality, including any areas outside of its boundaries which, in the commission's judgment, bear relation to the planning of the municipality" (see PA 1931, No 285, § 6 [CL 1948, § 125.36], as amended by PA 1962, No 138 [Stat Ann 1969 Cum Supp § 5.2996]), is of no little significance when courts are called upon to consider the reasonableness of zoning which depends upon the predictions of such a plan and the need for reasonable stability thereof once the plan has been adopted pursuant to the procedure required by section 8 of the act (CL 1948, § 125.38 [Stat Ann 1958 Rev § 5.2998]). In short, we are not disposed to grant any municipal master plan, not yet adopted according to section 6 (CL 1948, § 125.36, as amended by PA 1962, No 138 [Stat Ann 1969 Cum Supp § 5.2996]), the evidentiary value of reasonableness which Division 2 accords this one. The point is that the statutory requirement of formal adoption has a purpose, a rather manifest one, and our decision here should tend to effectuate that purpose. We come, then, to the usual question: Is the ordin-

ance brought to test reasonable in the attempted application thereof to plaintiffs' parcel? Our judgment, comporting with that of the trial judge, is negative.

The case is but another, as in the *Christine* and *Roll Cases, supra,* where the findings and conclusions of the chancellor are amply supported by proof showing that Troy·has depended too much upon an unofficial plan and that it has considered too little how its enacted limitation of use of plaintiffs' 200-x-150-foot corner parcel, to that of O–1 (office building), hinges so much upon speculative standards. Meanwhile the hapless property owner waits, pays taxes and hopes that either the anticipated development will come shortly or that the zoning authority will release to some extent its griphold of his property right. What was written for the Court by Justice DETHMERS, in *Gust* v. *Township of Canton,* 342 Mich 436, 442, comes to mind here:

"The extent of the owner's right to the free use of his property in the manner deemed best by him is not to be determined by such speculative standards. The test of validity is not whether the prohibition may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, but whether it does so now."

To the same effect is Justice T. M. KAVANAGH's discourse in *Christine, supra* at 516:

"Our courts have consistently held that the reasonableness of a zoning restriction must be tested according to existing facts and conditions and not some condition which might exist in the future. See the discussion in *Comer* v. *City of Dearborn,* 342 Mich 471, 477, where Justice CARR quotes from the case of *Corthouts* v. *Town of Newington,* 140 Conn 284, 288 (99 A2d 112, 38 ALR2d 1136), as follows:

" 'Zoning regulations constitute a valid exercise of the police power only when they have a "rational relation to the public health, safety, welfare and prosperity of the community" and are "not such an unreasonable exercise of [the police] power as to become arbitrary, destructive or confiscatory." *State* v. *Hillman*, 110 Conn 92, 100, 105 (147 A 294). Whether a zoning ordinance meets this test must be determined in the light of existing conditions, in order that the purpose for which the police power is invoked may be promoted. *Village of Euclid* v. *Ambler Realty Co.*, 272 US 365, 387 (47 S Ct 114, 71 L Ed 303, 54 ALR 1016).' "

The foregoing considerations bring us to Judge Pratt's opinion. We adopt it as our own subject only to the foregoing observations. The opinion:

"Plaintiffs are owners of land in the city of Troy, Oakland county, and instituted suit after an adverse ruling by said city on an application to rezone the subject property.

"Plaintiffs' land is situated on the northwest corner of the intersection of Big Beaver and Livernois roads. Its frontage is 660 feet on Big Beaver (also known as 16 Mile road) and 330 feet on Livernois. A portion of the parcel was zoned O–1, office building, and a portion R–1–B, one-family residential; however, defendant city conceded immediately prior to trial that the entire parcel should be zoned 'office building.' Thus, plaintiffs attack the validity of the zoning ordinance only as it applies to a parcel of their land on the northwesterly intersection corner, *i.e.*, a parcel with frontage of 150 feet on Big Beaver and 200 feet on Livernois. (This latter description excludes certain frontage taken for right-of-way purposes.) Plaintiffs have entered into a sales agreement with a major oil company subject to zoning which would allow the construction of a gasoline station on the subject property.

"Troy is a relatively new city (December, 1955) and can best be described as a burgeoning com-

munity, still in the throes of obtaining the necessary public improvements to realize its potential and inevitable growth. Its officials obviously recognize the dangers of lack of municipal foresight and planning and strive conscientiously to prepare for the impact. It is not unusual that planning is frequently frustrated and thwarted by the understandable failure of a township in the Detroit metropolitan area to anticipate the surge to be visited upon it and, as a result, a rural area becomes prey to what is eventually characterized as the 'nonconforming use.' It is within such a framework that this immediate problem must be considered.

"Troy is a city of some 33 square miles and a population in excess of 21,500. It is located east of the city of Birmingham and its southerly boundary is approximately 14 miles north of the center of Detroit. Aside from the usual, and many, roads and highways, it has been the recipient of the gift of a portion of I–75 (Chrysler expressway), which insures that very few citizens of Troy will ever be more than 3 miles from its seductive strips of concrete as it journeys from downtown Detroit to Sault Ste Marie.

"The parcel here is located just north of the expressway as it overpasses Livernois, and about 3/10 of a mile east of the expressway—Big Beaver interchange as the expressway swings to the north. Both Big Beaver and Livernois are 2-lane concrete roads with additional lane widening at the intersection to facilitate turning and avoid congestion. Both are well traveled roads (a 1962 traffic count had 10,541 vehicles going through the intersection in a 24-hour period) and the increasing effect of the I–75 interchange at Big Beaver and completion of I–75 in the Detroit to 12-Mile leg is a reasonable inference.

"With the exception of the subject parcel, which is zoned O–1, the corners of this Big Beaver-Livernois intersection are zoned B–2, community business. This latter classification extends for varying

distances along the frontage of the two roads but is quite extensive in application to parcels on the southwest and southeast corners of the intersection. The B–2 classification excludes filling stations; however, filling stations do exist on the southwest and northeast corners, having been erected prior to the date of incorporation. The southeast corner is vacant, but the hopeful projection is the construction of a large shopping center. The only other construction in the intersection area is a grocery or 'party' store adjacent to the filling station on the northeast corner. The area is surrounded by single-family residential districts with the exception of areas along Big Beaver between Livernois and the I–75 interchange which contain 2 office building parcels and a proposed civic center area. To the west of the interchange are expressway service areas on both sides of Big Beaver. To the north of plaintiffs' land is the site of the Troy high school.

"We begin a discussion of the legal aspects of this case with the recital of 3 fundamental propositions: (1) each zoning case is determined on the basis of the facts and circumstances peculiar to it; (2) to be valid a zoning ordinance must bear a direct and substantial relation to the preservation of public health, morals, safety, and general welfare; and (3) that the plaintiffs have the burden of establishing affirmatively the lack of such relationship.

"The attack of the plaintiffs here and the issues presented by proofs and arguments would appear to fall into these generalized categories:

"(1) the disparity of value resulting from present zoning and market.

"(2) the character of the district.

"(3) the effect of the 'master plan' of the city.

"(4) the division or breaking off of a parcel of plaintiffs' land.

"It is to these issues the court will address itself.

"(1) *Disparity of value and market.*

"Both parties presented experts, of varying degree of expertise, who offered their respective opinions as

to the value of the land under its present zoning clas-
sification as opposed to a classification allowing
filling station use.  There is no question but that re-
gardless of use this land has substantial value, al-
though the court is not convinced that the market is
presently favorable under O–1 zoning.  There is no
appreciable office use now being made and the effect
of the proposed Yamasaki building is a speculative
element since nothing is known as to time of con-
struction, size, use or even that the intention of the
owner as evidenced by the request to alter the zoning
from residential to commercial will be carried out.
The effect of other circumstances, *i.e.*, the high
school, the proposed civic center, shopping center
and the like, are also speculative.  The fact that
the land has substantial value and the disparity is
not outrageous or, at least, unreasonable, does not
satisfy the court that the present zoning results in
confiscation of the property of plaintiffs, but in ac-
cordance with precedential directives cannot and
does not eliminate the factors of disparity of value
and the market from its consideration.

"(2) *Character of district.*

"The area has been described heretofore and no
useful purpose can be served by reiteration.  Suffice
it to say that a view of the zoning map and a drive
through the area (which the court did) indicates the
residential character.  Much of the area is actually
vacant with numerous nonconforming uses evident.
What impresses most is the existence of the two
filling stations on corners of the subject intersection.
Testimony of traffic, fire, health and planning of-
ficials do not convince that there is any hazardous
or dangerous element involved.  All in all, it is not
the *present* character of the district that creates any
problem, but rather the present circumstances and
character as combined with proposed uses and the
implementation of the 'master plan' that creates the
visceral issue.

"(3) *Effect of 'master plan'.*

"The most significant exhibit presented deals with the 'master plan' of the city, particularly as that plan affects the area surrounding the I-75-Big Beaver interchange.  (Defendant's exhibit B)  Defendant city contends that the zoning here constitutes an integral part of the comprehensive zoning plan of the city of Troy and, thus, *ipso facto,* bears a direct and substantial relation to public purposes.  The existence of a 'master plan' is certainly an important element in the determination of a zoning dispute and many authorities so hold.  However, there is not precluded an examination of that plan and certainly the court is ever responsible to analyze its purport, particularly in its application to *existing* circumstances. Superimposing a master plan on a vacant, virgin community is one thing, but doing it on an existing, partially improved and developed community is another.  Concern must manifest itself when the ideal of the master plan meets, sometimes headlong, the practicality of concrete circumstances and the substantial rights of landowners.  There is no valid reason to restrict the use of this parcel to office building under present existing uses *nor under present zoning.*  The 'master plan' as it appears in exhibit B deals with 'possible ultimate' uses but has not been implemented by any zoning changes.  According to testimony, one parcel fronting on Big Beaver (Yamasaki) has been recently rezoned from residential to office building.  As a matter of fact, the testimony indicates that this portion, at least, of the master plan was not drawn until 1963 and only after the planning consultant was contacted (in 1962) with regards to a civic center project.  Further, the testimony is that no 'master plan' has been *adopted* by the city, but it is used only as a guide to land uses and implemented when possible by thoroughfares and zoning ordinances.  The picture presented to the court, then, is that *it is hoped* that investors and developers will agree to construct a shopping center in the area set aside (the parcel 4 blocks by 2 blocks south of Big Beaver and between the interchange

and Livernois), and an office complex (north of Big Beaver from Livernois west 2/10 of a mile and abutting the high school property on the north). The concern of the planning consultant is, of course, the ultimate, most desirable, development of the municipality. The concern of the city father is also that, with the added heavy responsibility of protecting present, real, and vital rights. In the weighing, the court must conclude that, admirable as the purpose may be and conscientious as the municipal action may be (and is in this instance), the effect of the 'master plan' is ephemeral and minimal. Overriding the ideal are the present, existing circumstances.

"(4) *Division of Plaintiffs' property.*

"This case took on a new look on the day trial began when the defendant conceded that the entire parcel (330 x 660) owned by plaintiffs should be zoned 'office building.' To follow further, defendant argues that to allow plaintiffs to unilaterally reduce the size of a parcel would allow landowners to subvert any zoning. One can readily accept such argument where the division or reduction is unreasonable and certainly where the landowner systematically pursues a course of minimal divisions. However, here the plaintiffs are owners of a large parcel and the division of a corner on an intersection does not appear unreasonable or subversive. Further, it is noted that defendant city has divided the parcel itself by its zoning ordinances, *i.e.*, presently the east 387 feet is zoned O-1, the west 273 feet is zoned R-1-B. To now say that the landowners cannot do what the city itself has done, because the city conceded on trial that the *entire* parcel should be O-1, is not justifiable. Plaintiffs do not dispute in this suit the zoning, actual or conceded, as to land other than the corner 150 x 200 parcel, and it is to that this decision relates.

"It is the ruling, then, of the court that O-1 (office building) zoning of the subject parcel is invalid in

that it bears no direct and substantial relationship to public health, morals, safety and general welfare."

We have considered both the plaintiffs' appeal and the defendant's cross-appeal as taken to the Court of Appeals. Having agreed with Judge Pratt's disposition of the issues presented by both, the appellate decision below will be reversed in part and affirmed in part and the judgment entered in circuit June 28, 1965, will be affirmed. No costs, neither side having prevailed in full.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, and ADAMS, JJ., concurred.

T. G. KAVANAGH, J., took no part in the decision of this case.