SHAYA v STEIN

1. PROPERTY—REAL PROPERTY—VALUATION.

A finding of fact that real property in question had a value of $75,000 was not clearly erroneous where experts had placed values on the property ranging from $56,000 to $100,000 and where the revenue stamps on the warranty deed and title insurance on the property were both for $75,000.

2. JUDGMENT—APPEAL AND ERROR—AMENDMENT.

A judgment directing specific performance of a contract of sale of real property but erroneously stating the price to be the "actual cost" determined by the trial judge in his opinion, rather than 112% of "actual cost" as agreed by the parties in their contract, should be amended to make the sale price 112% of the "actual cost".

Appeal from Macomb, James E. Spier, J. Submitted Division 2 March 8, 1972, at Detroit. (Docket No. 11762.) Decided July 25, 1972.

Complaint by Ezra Shaya against Leo Stein, Esther Stein, Guido Gualtieri, and Antonia Gualtieri for declaratory relief and specific performance of an option to purchase. Defendant Antonia Gualtieri cross-claimed against defendants Leo and Esther Stein for indemnification. Judgment for plaintiff and cross-plaintiff. Defendants appeal. Affirmed and remanded with instructions.

*Robinson, Ciaramitaro & Szot,* for plaintiff Ezra Shaya.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 1144.

5 Am Jur 2d, Appeal and Error §§ 607, 609.

[2] 46 Am Jur 2d, Judgments §§ 717, 719.

*Hyman & Rice* (by *Robert Friedman),* for defendants Leo and Esther Stein.

*Towner, Rosin & York,* for defendant Antonia Gualtieri.

Before: LEVIN, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Plaintiff filed his complaint praying for declaratory relief and specific performance of a certain option to purchase. After a three day trial, the court issued an opinion on June 29, 1970, granting the relief requested and established the cost figure as being $75,000. The judgment was eventually signed on February 25, 1971. Thereafter, a motion for a new trial was denied by Judge Hunter D. Stair, successor to the late Honorable James E. Spier, and this appeal followed as of right.

The plaintiff, Dr. Ezra Shaya, entered into a lease of a certain clinic located in Warren, Michigan, on May 16, 1963, with Leo Stein and Esther Stein, his wife, which provided for beginning of possession on October 1, 1963. Attached to this lease was a rider which contained the following pertinent clauses:

*"It is further agreed by and between the parties that landlord shall deliver to the tenant one hundred twenty (120) days after commencement of the term of this lease a statement in writing setting forth the actual cost of the land, entire building and improvements.* Provided, there has been no default in the terms hereof by tenant, tenant shall have the following options to purchase said premises; subject to easements and restrictions of record:

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"A. Five years after the commencement of the terms of this lease, *tenant shall have the option to purchase same for One Hundred Twelve (112%) Percent of aforesaid actual cost;* and

"B. Ten years after the commencement of the terms of this lease, *tenant shall have the option to purchase same for One Hundred Ten (110%) Percent of the aforesaid actual costs;*

"To exercise the first of said options, tenant shall give landlord written notice thereof by registered or certified United States mail, not less than four (4) months prior to the expiration of the fifth year of the term; * * * Said notice shall be accompanied by a cashier's or certified check for $5,000.00 payable to landlord, which sum shall be retained as a deposit and applied on the purchase price * * * ."

On or about September 11, 1963, Stein who was a builder of medical clinics, sold the property to one Hyman Gordon, and notified the plaintiff that he was to pay his first rent directly to the new owner. Stein testified at trial that Gordon paid $75,000 plus a $24,500 credit from other real estate transactions. However, the warranty deed itself carries revenue stamps indicating the consideration of $75,000 and the title insurance policy was ordered in that amount.

Within the specified period, and on or about November 20, 1963, Stein furnished the plaintiff with a cost sheet showing that the total cost came to $98,900. This sheet was neither signed nor certified. The plaintiff notified Stein that he was shocked at the amount and considered that sum to be highly exorbitant. Some conferences followed, but they were not successful in settling the controversy.

On July 1, 1966, plaintiff received a notice signed by Mr. Gordon that he had sold the property and assigned the lease, including the option to

purchase, to a Mr. and Mrs. Guido Gualtieri, and that all rents in the future were to be paid directly to them. On July 12, 1966, plaintiff mailed a letter to the new owners, indicating therein that certain promises of repairs had been made and that he expected them to be completed as soon as possible. Plaintiff also referred to the option to purchase, and demanded a new set of costs. On May 10, 1968, the plaintiff, through his attorney, advised Mr. Gualtieri in writing of his desire to exercise the option, and enclosed a certified check in the amount of $5,000. This sum was returned to plaintiff with a letter indicating Gualtieri's willingness to recognize the option to purchase, but only at the previously forwarded cost figures. Thereafter, plaintiff commenced the instant litigation.

The fundamental issue before us centers around the question of the findings of the trial court in connection with the actual cost contemplated by the option.

At the trial, Stein testified that he had given up the building of medical clinics and that he had either mislaid or destroyed all of his records; therefore, he was unable to prove the actual costs of construction. As a result both sides had to rely upon experts for this information.

Witnesses in behalf of the plaintiff placed the cost at approximately $56,000, while those representing the defendants have varied from $90,000 to $100,000 including the land. For us to determine how the trial court arrived at the figure of $75,000 would be a mere matter of conjecture. It may be that he split the difference; or he may have relied upon the revenue stamps and title insurance.

The rule is well-established that appellate courts will give considerable weight to the conclusions of

a trial judge in equity cases and the findings of fact will not be disturbed unless clearly erroneous. *Morton v De Young,* 185 Mich 94 (1915); *Christine Building Co v City of Troy,* 367 Mich 508 (1962); *Biske v City of Troy,* 381 Mich 611, 613 (1969); *Papin v Demski,* 383 Mich 561 (1970), and GCR 1963, 517.1.

We cannot say that we would have arrived at a different conclusion had we been sitting in the place of the trial court. Further, we are not oblivious of the fact that this distinguished jurist in 1970 was the senior circuit judge in the entire State of Michigan, and, therefore, had the advantage of many years of experience on the bench, during which he created for himself an amenable record for fairness and good judgment.

During the oral arguments before this Court, the question arose as to whether or not the judgment was in compliance with the opinion of the trial judge. Accordingly, the attorney for Mr. and Mrs. Stein was authorized to obtain an affidavit from Mr. Allan Nachman, who was their attorney during the trial. That affidavit has been furnished and was found to contain the following sentence:

"That a copy of said judgment was sent to the deponent for review but that your deponent neglected to realize that the $75,000.00 'actual cost' figure arrived at by the trial judge should be properly increased by 12 percent in accordance with the option to purchase paragraph contained in the lease agreement."

It is obvious from the language of the previously quoted option that the parties agreed that the purchase price would be 112% of the actual costs. The court found these costs to be $75,000; therefore 12% should be added to that figure, making a total of $84,000. We conclude therefore that the

judgment should be amended by deleting any reference to the sum of $75,000 as the purchase price, and inserted in lieu thereof should be the correct figure of $84,000.

Affirmed, but remanded to the circuit court for modification of the judgment as directed by this opinion, with such other accounting as may be necessary. No costs, as neither side has prevailed in full.

All concurred.