KIRK v TYRONE TOWNSHIP

Docket No. 56048. Argued January 7, 1976 (Calendar No. 3).—Decided
     December 21, 1976.

  Clara L. and Amuel M. Kirk brought a complaint against Tyrone
    Township, Livingston County, alleging the invalidity of the
    zoning ordinance prohibiting the development of a mobile home
    park on the plaintiffs' property, which was zoned for agricul-
    tural-residential use. The Livingston Circuit Court, Paul R.
    Mahinske, J., granted judgment for the defendant. The Court of
    Appeals, Quinn, P. J., and Holbrook and Peterson, JJ., after
    remand by the Supreme Court for further consideration, af-
    firmed the circuit court. Plaintiffs appeal. *Held:*

    1. The correct test for judicial review of requested zoning
    changes was expressed in the majority opinion of *Kropf v
    Sterling Heights,* 391 Mich 139, 158; 215 NW2d 179 (1974). The
    plaintiff must show: first, that there is no reasonable govern-
    mental interest being advanced by the present zoning classifica-
    tion itself, or, second, that an ordinance may be unreasonable
    because of the purely arbitrary, capricious and unfounded

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning § 338.

[2] 82 Am Jur 2d, Zoning and Planning § 25.

[3, 4, 6, 12] 82 Am Jur 2d, Zoning and Planning § 27.

[4, 6, 12] 82 Am Jur 2d, Zoning and Planning § 15.

[5] 5 Am Jur 2d, Appeal and Error §§ 704, 705, 840 *et seq.*

[7] 82 Am Jur 2d, Zoning and Planning § 14.

[8, 12] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist
     Camps §§ 13, 14.

  Use of trailer or similar structure for residence purposes as within
    limitation of restrictive covenant, zoning provision, or building
    regulation. 96 ALR2d 232.

  Maintenance or regulation by public authorities of tourist or trailer
    camps, motor courts, or motels. 22 ALR2d 774.

[9] 82 Am Jur 2d, Zoning and Planning § 69 *et seq.*

  Requirement that zoning variances or exceptions be made in ac-
    cordance with comprehensive plan. 40 ALR3d 372.

[10] 82 Am Jur 2d, Zoning and Planning § 68.

[11] 82 Am Jur 2d, Zoning and Planning §§ 272, 273.

[13, 14] 20 Am Jur 2d, Courts § 231 *et seq.*

exclusion of other types of legitimate land use from the area in question.

2. It is the burden of the party attacking a zoning ordinance to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property; it must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness. An aggrieved property owner, to sustain an attack on a zoning ordinance, must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted. A zoning ordinance will be presumed valid, with the burden on the party attacking it to show it to be an arbitrary and unreasonable restriction upon the owner's use of his property.

3. The plaintiffs in this case have not successfully proved either contention under the appropriate standard of review. It has not been demonstrated that Tyrone Township is excluding mobile-home parks, or that as a practical matter the township excludes mobile home parks by restricting them to land which is unsuitable for that purpose. Although there is no doubt that the subject land's value as a mobile-home park exceeded its value as a residential property, it still was worth a great deal as zoned. A showing of confiscation will not be justified by showing a disparity in value between uses. The land has not been proven unsuitable for use as zoned, nor has there been a demonstration that there is no market for single-family residences.

Justice Levin, joined by the Chief Justice, concurred on the ground that the plaintiffs' proofs on the issues of exclusion of mobile-home developments from the township and on whether the rezoning of their parcel of land permits a reasonable use of the parcel were largely conclusory and do not adequately support rezoning to mobile-home use. The issue of the correct test for zoning changes was not raised at the trial level, in the Court of Appeals, or before the Supreme Court, and is irrelevant to the Court's disposition of the case.

Justice Fitzgerald, joined by the Chief Justice, dissented from the overruling of the Supreme Court's declared rule on zoning changes on the ground that it is precipitous and ill-advised in the light of the short time since the rule was announced. Unless the Supreme Court respects its own constitutional decisions, it can hardly expect that others will do so. A substantial departure from a constitutional rule of law can only be justified

in the light of experience with the application of the rule to be abandoned or in the light of an altered historic environment.
Affirmed.

OPINION OF THE COURT

1. ZONING—REASONABLENESS—GOVERNMENTAL INTEREST—REQUESTED CHANGE OF CLASSIFICATION.

The correct test for judicial review of requested zoning changes is that the plaintiff requesting rezoning must show: first, that there is no reasonable governmental interest being advanced by the present zoning classification itself, or, second, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.

2. ZONING—ORDINANCES—PRESUMPTION OF VALIDITY.

A zoning ordinance comes to the Supreme Court clothed with every presumption of validity.

3. ZONING—ORDINANCES—BURDEN OF PROOF—REASONABLENESS.

It is the burden of the party attacking a zoning ordinance to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property; it must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.

4. ZONING—ORDINANCES—REASONABLENESS.

An aggrieved property owner, to sustain an attack on a zoning ordinance, must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted.

5. APPEAL AND ERROR—EQUITY—SUPREME COURT—FINDINGS OF TRIAL JUDGE.

The Supreme Court is inclined to give considerable weight to the findings of the trial judge in equity cases, although they are heard *de novo* on appeal.

6. ZONING—ORDINANCES—REASONABLENESS—BURDEN OF PROOF.

A zoning ordinance is presumed valid, with the burden on the party attacking it to show it to be an arbitrary and unreasonable restriction upon the owner's use of his property.

7. ZONING—ORDINANCES—EXCLUDED USES—EQUAL PROTECTION.

A zoning ordinance which on its face totally excludes from a municipality a legitimate use of property also carries with it a

strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use.

8. ZONING—TOWNSHIPS—ORDINANCES—MOBILE HOME PARKS.

A property owner failed to demonstrate that a township zoning ordinance excluded mobile-home parks from the township where the township's proposed master plan for future land use designated two areas, one of 600 to 800 acres and one of 80 acres, where the owners of the larger parcel had not requested rezoning, the smaller parcel was rezoned by circuit court order but the owner had not requested a building permit or made any progress on building a mobile-home park; and there was an apparent dearth of other requests to the township to rezone suitable lands for mobile-home parks.

9. ZONING—EVIDENCE—TOWNSHIPS—MASTER PLAN.

The question whether a township's master plan for future land use was adopted goes only to its reasonableness and not to its admissibility in a zoning case.

10. ZONING—CONFISCATION OF PROPERTY—DISPARITY IN VALUE.

A claim that a zoning ordinance is confiscatory as applied to a plaintiff's property is not proven by showing a disparity in value between uses.

11. ZONING—CONFISCATION OF PROPERTY—DISPARITY IN VALUE.

An owner of property zoned for agricultural-residential use failed to demonstrate that a township zoning ordinance as applied to his property was confiscatory where the land was not proven unsuitable for use as zoned; the owner did not demonstrate a lack of demand for single-family residences; and although a greater investment per unit would be required for development of the property as single-family residences rather than as the proposed mobile home park, the property had sufficient value to ensure the owner a profit on the investment as zoned.

CONCURRING OPINION

KAVANAGH, C. J., and LEVIN, J.

12. ZONING—ORDINANCES—REASONABLENESS—BURDEN OF PROOF.

*An aggrieved property owner did not sustain an attack on a zoning ordinance where his proofs on the issues of exclusion of mobile-home developments from a township by its zoning ordinance, and on whether the zoning of the property in question permits a reasonable use of the parcel, were largely conclusory and do not adequately support rezoning to mobile-home use.*

DISSENTING OPINION

KAVANAGH, C. J., and FITZGERALD, J.

13. ZONING—COURTS—PRECEDENT.

*An action of the Supreme Court overruling the rule of law that
even if present zoning is not unreasonable or confiscatory, a
proposed use of land should be permitted if reasonable under
all the circumstances is precipitous and ill-advised in light of
the passage of less than two years since that rule of law was
announced by the Supreme Court.*

14. CONSTITUTIONAL LAW—COURTS—PRECEDENT.

*A substantial departure from a constitutional rule of law can
only be justified in the light of experience with the application
of the rule to be abandoned or in the light of an altered historic
environment.*

*Richard A. Hamilton* for plaintiffs.

*Carl J. Schoemer* for defendant.

WILLIAMS, J. Plaintiffs challenge a township's
zoning ordinance, claiming it excludes mobile
home parks. They also argue that enforcement of
the ordinance amounts to confiscation of their
property. This forces us to examine again the
appropriate standard for court review of requested
zoning changes. This requires revisiting our recent
zoning trilogy of *Sabo v Monroe Twp,* 394 Mich
531; 232 NW2d 584 (1975); *Nickola v Grand Blanc
Twp,* 394 Mich 589; 232 NW2d 604 (1975), and
*Smookler v Wheatfield Twp,* 394 Mich 574; 232
NW2d 616 (1975). In *Sabo,* we adopted the concur-
ring opinion in *Kropf v Sterling Heights,* 391 Mich
139, 164 *ff;* 215 NW2d 179 (1974), which held that
"[e]ven if present zoning is not unreasonable or
confiscatory, a proposed use should be permitted if
reasonable under all the circumstances". 394 Mich
531, 536–537 (footnotes omitted). We hold that the
correct test was expressed in the majority opinion

of *Kropf v Sterling Heights,* 391 Mich 139, 158;
215 NW2d 179 (1974). The plaintiff must show:

"[F]irst, that there is no reasonable governmental
interest being advanced by the present zoning classifica-
tion itself * * * or

"[S]econdly, that an ordinance may be unreasonable
because of the purely arbitrary, capricious and un-
founded exclusion of other types of legitimate land use
from the area in question."

We find that plaintiffs have not successfully
proved either contention under the appropriate
rules. We therefore sustain the judgments of the
trial court and the Court of Appeals.

## I—FACTS

Plaintiffs own approximately 117 acres[1] about 20
miles south of Flint in Livingston County. On the
east, the land abuts a service drive, which in turn
abuts US-23, a limited-access highway. East of the
expressway the land is agricultural. There is an-
other agricultural area to the south and west of
the property. Apparently, all are working farms.
One mile farther west is a man-made lake, Lake
Shannon, around which some single-family resi-
dences have been built.

In the northwest quadrant is a manufacturing
plant. Immediately adjacent to the site on the
north is an 18-hole public golf course.

Plaintiffs petitioned to have their property
changed from "AR", agricultural-residential, to
"TR-1", which would permit a mobile home park
to be developed.

---

[1] The engineering site report describes it as 117 acres with four
potholes of 1-to-3 acres each.

There appear to be two separate areas designated for mobile home parks on the proposed future land use plan for the township. One, of 80 acres, was rezoned to that classification by order of the circuit court. The other encompasses 600–800 acres. As of oral argument, there was no existing mobile home park in the township, nor had any landowner other than the Kirks applied for rezoning or for a permit.

Plaintiffs contend that neither designated area is really suitable for mobile home park use. They argue that the rezoned parcel is unacceptable because it is remote from substantial traffic patterns, and the 600–800 acre site is undesirable because of its distance from access to the highway.

There is some question whether the land use plan was ever officially adopted, but even those who say it was admit it was adopted no earlier than one month after plaintiffs' lawsuit was filed. No land, however, has been zoned for mobile home parks in accordance with this plan. The zoning map remains different from the land use plan, and the township has not rezoned any land without application by the landowner since the plan's "adoption". The plan itself has not been amended.

The separate Tyrone Township Trailer Park Ordinance requires that an application for an annual permit be filed, along with site plans, with the township clerk. Other requirements include a minimum lot size of 6,000 square feet, and that residents register with the permit holder. All such parks must be in a TR district.

Plaintiffs contend that their proofs demonstrate:

1. The property cannot be developed economically as single-family or as agricultural property.

As agricultural property, plaintiffs' witness maintains the income received from the property

would not be sufficient to yield the necessary return once taxes and insurance were paid.

As for single-family residences, plaintiffs' witness testified that because of the cost of such things as sewage treatment and utilities, in order to insure a profit the lots would have to sell for just under $6,000. This would make them more expensive than comparable lots in the area which sell for $4,000 to $5,500.

The lack of public water and sewer service would make the site unattractive for industrial use, since property only four miles away comes so equipped. Further, the apparent demand for commercial use is apparently quite small in the general area.

2. It is more practical to develop the site as a mobile home park, primarily because the expenses of sewage collection and disposal can be spread over a greater number of units in a mobile home park than in a single-family development. The problem is particularly acute on plaintiffs' property, they argue, because there is no public sewer or water system available or planned. The system will cost more than might be normally anticipated because the land's heavy clay soil makes it impossible to build conventional septic tanks.

3. Location of the property makes it suitable for a mobile home park, surrounded as it is by open space and equipped with direct access to US-23.

4. There is a present demand for a mobile home park on this site.

5. A mobile home park on the property is the highest and best use at the present time.

6. Development of the parcel as a mobile home park would have no adverse effect on the public health or safety, or on the value of surrounding property.

7. Use of the property as a mobile home park would not affect the level of Lake Shannon, but the fertilizer used on the lawns would add to the phosphate level in the lake. Plaintiffs' witness, however, emphasized that the phosphate damage would be comparable to that from single-family residences with lawns or from agricultural use on the site.

8. There was a great deal of public pressure on township officials to deny the rezoning.

On the other hand, the defendant township contends:

1. If the land were developed as single-family residential, it would produce 70 building sites, yielding plaintiffs a gross return of $280,000 to $385,000 on an initial investment of $70,000 to $75,000.

2. When plaintiffs bought the property, they did not verify the zoning classification, even though they bought it intending to build a mobile home park on the site.

3. While opposition to the rezoning application was heated, plaintiffs do not contend they did not receive a fair hearing. The planning commission denied the rezoning request because the majority felt the land was ideally suited for industry. The future land use plan contemplates light-industrial use in a portion of the disputed site.

4. Development of a mobile home park on the site would speed the flow of drainage to adjoining land.[2]

5. The development would discharge 12,500,000 gallons of treated sewage into Lake Shannon,

---

[2] Plaintiffs' witness, however, testified that the level of Lake Shannon would not be affected.

which, because it would not be phosphate-free, would adversely affect the lake ecology.[3]

6. There is no need or demand for mobile home parks in the township, and, on the contrary, requests have been received for light-industrial sites in areas around the subject property. Defendant points out that the area rezoned by court order to a mobile home park district has not yet been used for such a park.

The trial court granted defendant's request for a dismissal, holding that plaintiffs had failed to carry their burden of proof that the zoning ordinance was unreasonable, that it was unreasonable as applied to the subject property, and that there was a concerted effort by township officials to exclude mobile home parks. Further, the court found that confiscation had not been established, inasmuch as plaintiffs were gaining income from the undeveloped property almost equal to the annual tax, and that, even considering the required $70,000 investment in the sewage treatment unit, the sale of 70 residential units at the going market price would result in a 400% return on the investment. The court also found no abuse of the township's policy powers.

The Court of Appeals originally reversed the trial court's holding on the basis of the "preferred use" doctrine. However, following *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), reversing decisions relying on this doctrine, we remanded this case to the Court of Appeals. That Court, in a memorandum opinion, then found no reversible error. We granted leave to appeal August 23, 1974. 392 Mich 789.

---

[3] A review of the record, however, as clarified on oral argument, indicates that the phosphate run-off would result not from sewage, which would be treated to reduce about 80% of the phosphate by volume, but from the use of lawn fertilizers.

## II—THE APPROPRIATE STANDARD

The principles and tests to use to determine whether the present zoning of plaintiffs' property is valid was detailed in *Kropf*.

The important principles require that for an ordinance to be successfully challenged plaintiffs prove:

"[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

"[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question." 391 Mich 139, 158.

The four rules for applying these principles were also outlined in *Kropf*. They are:

1. " '[T]he ordinance comes to us clothed with every presumption of validity.' " 391 Mich 139, 162, quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

2. " '[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * * . It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.' " 391 Mich 139, 162, quoting *Brae Burn, Inc.*

3. "Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted." 391 Mich 139, 162–163.

4. " 'This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity

cases.' " 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962).

See *Nickola v Grand Blanc Twp,* 394 Mich 589, 595, 600–601; 232 NW2d 604 (1975) (Williams, J.).

Therefore, "[a] zoning ordinance will be presumed valid, with the burden on the party attacking it to show it to be an arbitrary and unreasonable restriction upon the owner's use of his property." 394 Mich 589, 595, 600.

In *Sabo v Monroe Twp,* in a 3-to-2 decision, we affirmed the Court of Appeals and allowed the proposed use on the ground that "[t]he record * * * establishes that the proposed use * * * is reasonable". 394 Mich 537. We noted that "construction of a mobile-home park would be 'harmonious, compatible, appropriate' and would not 'impinge unreasonably on the value or use of nearby properties or impair sound communal development.' " 394 Mich 537, fn 6.

*Sabo* represented the theory proposed in the concurring opinion in *Kropf.* In *Sabo,* however, we also recognized that the *Kropf* concurrence would have required that proofs be presented administratively, and that judicial review be directed to determining whether there is support on the record for an administrative finding that the proposed use is reasonable. However, we recognized "it is the present practice to present the proofs in circuit court and for a reviewing court to make its own independent examination and analysis of the record". 394 Mich 537.

Thus, both the majority in *Sabo,* and the *Kropf* concurrence, recognized that the Legislature had not enacted "an administrative procedure act providing for review of local agency action in con-

tested cases" for use if local authorities deny a change in zoning. 391 Mich 139, 164 at 173.[4]

This procedure is still non-existent. At the present time, the Legislature has chosen to place the zoning authority in the townships and municipalities.

Upon reflection, it does not seem wise as *Sabo* did to attempt to engraft upon the established legislative scheme of zoning and re-zoning, a new system which admittedly requires new legislative action to operate optimally. Should the Legislature choose to revise the approach to zoning amendments in our state, this Court would, of course, view matters differently. But, as of the present time, it seems wisest to return to the philosophy expressed in *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957), and the *Kropf* majority. As we said in *Brae Burn,* and quoted again in *Kropf,* "The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life". 391 Mich 139, 161.

Therefore, unless the Legislature speaks otherwise, the appropriate standard by which the validity of a zoning ordinance may be challenged is that, to overcome the presumption of validity with which a zoning ordinance, as all legislation, is clothed, the party attacking the ordinance bears the burden of proving that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his or her property. 391 Mich 139, 162.

---

[4] The *Kropf* concurrence suggested that until the Legislature acted, GCR 1963, 711, providing for an order of superintending control might be used to appeal adverse zoning determinations. However, this would require reliance on an extraordinary writ as a normal part of the appellate procedure, a function which it was not intended to fulfill. 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 57.

Having clarified the standard, we turn to a consideration of whether plaintiffs by their proofs have met it. We hold they have not.

### III—EXCLUSION—OR NOT?

Plaintiffs present two arguments that require consideration: (1) that the township zoning ordinance excludes mobile home parks, and, (2) that the zoning classification, as applied to plaintiffs' property, is confiscatory.

In *Kropf*, we said,

"On its face, an ordinance which *totally* excludes from a municipality a [legitimate] use * * * also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use." 391 Mich 139, 155–156. (Emphasis in original.)

We agree with the trial court that it has not been demonstrated that Tyrone Township is excluding mobile home parks.

The proposed master plan for future land use indicates two areas earmarked for mobile home parks, one of 80 acres and the other of 600–800 acres. There was some question as to whether the master plan was ever adopted. However, such a plan does exist, and the fact of its adoption goes only to the evidentiary weight of its reasonableness, and not to its admissibility. *Biske v City of Troy,* 381 Mich 611, 616; 166 NW2d 453 (1969).

There has been no request made by the owners of the larger parcel for rezoning. Of greater significance is the status of the 80-acre property rezoned to mobile home park use by the same court which denied plaintiffs' request. Despite the rezoning

gained through successful court action,[5] as of oral argument, there had been no request made for a building permit, and no progress made on actually building a mobile home park.

Thus the facts before us differ from other cases in which exclusion was present. For example, in *Gust v Canton Twp,* 342 Mich 436, 438; 70 NW2d 772 (1955), the *ordinance* and record disclosed the exclusion of mobile homes from the entire township. In *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389, 391; 53 NW2d 308 (1952), we found that although the ordinance, on its face, permitted churches and schools in about 10% of the village's area, in *effect,* they were excluded by ordinance from the entire village. In *Dequindre Development Co v Warren Twp,* 359 Mich 634, 638; 103 NW2d 600 (1960), although the township already contained one mobile home park, we held that exclusion was established where the zoning ordinance "in effect, prohibited trailer parks by making no provision therefor".

Plaintiffs attempt to demonstrate that by zoning land for mobile home parks which is unsuitable for that purpose, the township is, as a practical matter, following a policy of exclusion. As to the 80 acres judicially rezoned, it was apparently not the judgment of either the trial court or the plaintiff requesting the rezoning that the land was unsuitable for mobile home parks. As to the 600–800 acres, there has been no such record developed before this Court.

At the present time there is no evidence, in view of the apparent dearth of requests, that the township precludes the possibility of rezoning other suitable land for this purpose if needed.

[5] We do not have an indication on the record of why this property was rezoned.

Under the facts before us today, a case of exclusion of mobile home parks from the township has not been established.

## IV—The Confiscation Problem

Plaintiffs have also failed to demonstrate that the township zoning ordinance is confiscatory as to their property.

In *Kropf* we required the property owner claiming confiscation to prove that application of the existing ordinance to his property would "preclude its use for any purpose to which it is reasonably adapted". 391 Mich 139, 163.

Although there is no doubt the subject land's value as a mobile home park exceeded its value as residential property, it still was worth a great deal as zoned. A showing of confiscation will not be justified by showing a disparity in value between uses. *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 433; 86 NW2d 166 (1957). See *Reibel v Birmingham,* 23 Mich App 732, 738; 179 NW2d 243 (1970).

This is not a case where the land has been proven unsuitable for use as zoned, *Anderson v City of Holland,* 344 Mich 706, 710; 74 NW2d 894 (1956), nor has there been a demonstration that there is no market for single-family residences. *Long v Highland Park,* 329 Mich 146, 152; 45 NW2d 10 (1950).

Although we hear zoning cases *de novo,* as in all equity cases, we give considerable weight to the trial court's findings. *Christine Building Co v City of Troy,* 367 Mich 508, 517–518; 116 NW2d 816 (1962). The trial court found, and the Court of Appeals in effect sustained the finding, that there was no confiscation in this case. We agree.

Although a substantial investment was necessary in order to build a sewage treatment plant for a single-family residence, the same type of physical plant was required for the mobile home park. The only difference was that the park provided a greater number of units over which to amortize the cost. However, even with a smaller number of units, the trial court found the property still has sufficient value to ensure plaintiffs a profit on their investment.

## V—CONCLUSION

Plaintiffs have not established any other reason to require reversal of the lower court decisions. Although we do not approve of the apparent looseness concerning adoption or nonadoption of the master plan, it is not necessary to review this issue in order to come to today's decision.

The Court of Appeals and the trial court are sustained.

No costs; a public question.

COLEMAN, LINDEMER, and RYAN, JJ., concurred with WILLIAMS, J.

LEVIN, J. *(concurring).* Plaintiffs' proofs on the issues of exclusion of mobile-home developments from the township and on whether the "agricultural-residential" zoning of their 113 acre parcel of land permits a reasonable use of the parcel were largely conclusory and do not adequately support rezoning to mobile-home use.

## I

The parcels in the township designated for mo-

bile-home use[1] had not, at the time of the hearing, been developed. There was, however, no substantial evidence that they could not or would not be so developed.[2] Even if it is a reasonable inference that those parcels would have been developed with mobile home parks if that was feasible, the trier of fact was not obliged to draw that inference or to conclude that mobile-home parks had in effect been excluded from the township.

II

The proofs on the issue of the reasonableness of the present zoning were lacking in specificity.

Witnesses for the plaintiffs expressed the opinion that because of soil conditions and other circumstances the land could not profitably be farmed.

Plaintiffs' proofs were principally directed to the feasibility of developing the parcel for single family use. The zoning ordinance requires large lots (130 foot frontage, 30,000 square feet)[3] with attendant increased per lot improvement cost. The cost of the sewage treatment plant necessitated by the soil conditions was $70,000.

An expert witness testified for the plaintiffs that "[c]onsidering the cost of providing sewage treatment, the cost of records [presumably "roads"] and

---

[1] An 80 acre parcel was "rezoned", by the circuit court in another proceeding, for this use. A 600–800 acre tract was shown in a future land use plan as available for this use, but that designation had not been reflected in the zoning ordinance.

[2] The only evidence tending to show that those parcels would not be so developed was that they were located some distance from paved roads.

[3] If an approved community sewer or central water system were to be installed, the minimum requirements would be 100 foot frontage and 20,000 square feet. The area was not served by a community sewer or water system.

utilities, development costs, profit and overhead, the lots would have to retail for just under $6,000, and in my opinion in this location [single-family lots] would not sell for that money"; the market value of comparable lots in the area ranged from $4,000 to $5,500 per lot.[4]

There were no specific proofs, however, concerning the cost of platting, roads, storm sewers, a water system or wells, sewer and water lines or sales costs,[5] nor was there any evidence concerning the time required to construct these improvements and to sell the lots or the availability and cost of financing during the construction and sales periods.

There is reason to believe—taking into consideration all such costs, the absence of established consumer demand,[6] and the prospect that the time required to improve and sell the lots might be unduly extended because of adverse construction or market conditions—that no prudent investor would undertake the improvements required to create large single-family lots at this location. Without specific proofs, however, the trier of fact was not obliged to so find.


III


This case was fully briefed in this Court by the plaintiffs and the defendant before *Sabo v Monroe Township,* 394 Mich 531; 232 NW2d 584 (1975),

[4] The evidence was that 70 lots could be developed under the ordinance on plaintiffs' parcel.

[5] For example, advertising, real estate commissions, title insurance, transfer taxes.

[6] There was no evidence of a successful single-family development in the area. It appears that the parcel is surrounded by undeveloped land, much of it devoted to farm use.

and the companion cases[7] were decided. No supplemental briefs were filed. *Sabo* was not adverted to during oral argument.   .

The circuit court hearing was held before either *Kropf*[8] or *Sabo.* Since a verdict was directed for the defendant township following the conclusion of plaintiffs' proofs, the defendant has had no opportunity to offer proofs on the reasonableness of the proposed use; we could not properly consider that question on a one-sided record.

The majority improperly raises the *Sabo* issue *sua sponte,* an issue not raised at the trial level, in the Court of Appeals, or in briefs or during oral argument in this Court, and irrelevant to the majority's disposition.

## IV

In fairness to the plaintiffs,[9] and in recognition of the uncertainty of zoning jurisprudence, our judgment of affirmance should be without prejudice to further proceedings. While the plaintiffs' proofs are not adequate, they tend to establish that the township has effectively excluded mobile-home developments, farming is not economically feasible, the improvidence of developing this land for single-family residential purposes and that a mobile-home park might be compatible with surrounding uses and orderly development of the community.

KAVANAGH, C. J., concurred with LEVIN, J.

FITZGERALD, J. *(dissenting).* I view the action of

---

[7] *Smookler v Wheatfield Township,* 394 Mich 574; 232 NW2d 616 (1975), and *Nickola v Grand Blanc Township,* 394 Mich 589; 232 NW2d 604 (1975).

[8] *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974).

[9] It would appear that plaintiffs have had no economic return from this land during this prolonged litigation. The agricultural rental value, at the time of hearing, covered only the real estate taxes.

the majority in overruling *Sabo v Monroe Twp,* 394 Mich 531; 232 NW2d 584 (1975); *Nickola v Grand Blanc Twp,* 394 Mich 589; 232 NW2d 604 (1975), and *Smookler v Wheatfield Twp,* 394 Mich 574; 232 NW2d 616 (1975), as precipitous and ill-advised in light of the short passage of time since these cases were declared to be the view of this Court on zoning changes.

In this overruling action, the concern and counsel of Mr. Justice Stewart comes to mind as he wrote, dissenting, in *Mitchell v W T Grant Co,* 416 US 600, 634–636; 94 S Ct 1895; 40 L Ed 2d 406 (1974):

"I would add, however, a word of concern. It seems to me that unless we respect the constitutional decisions of this Court, we can hardly expect that others will do so. Cf. *Roofing Wholesale Co v Palmer,* 108 Ariz 508, 502 P2d 1327 (1972). A substantial departure from precedent can only be justified, I had thought, in the light of experience with the application of the rule to be abandoned or in the light of an altered historic environment. Yet the Court today has unmistakably overruled a considered decision of this Court that is barely two years old, without pointing to any change in either societal perceptions or basic constitutional understandings that might justify this total disregard of *stare decisis.*

*  *  *

"A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government. No misconception could do more lasting injury to this Court and to the system of law which it is our abiding mission to serve."

I would have considered this case in light of the cases today overruled.

KAVANAGH, C. J., concurred with FITZGERALD, J.